UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA EUGENE ROBINSON,

          Plaintiff,

v.                                Case No. 3:25-cv-113-MMH-PDB

LIEUTENANT M.L. EDWARDS,
et al.,

          Defendants.

_____

### <u>ORDER OF DISMISSAL WITHOUT PREJUDICE</u>

Plaintiff, Joshua Eugene Robinson, who is currently housed at Santa Rosa Correctional Institution, is proceeding on a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1; Complaint). He also filed a request to proceed as a pauper (Doc. 2).

In the Complaint, Robinson names the following individuals as Defendants: (1) Lieutenant M.L. Edwards; (2) Sergeant Wells; (3) Classification Officer Steven Schwartz; (4) Lieutenant J.I. Minshew; (5) Assistant Warden Barnes; (6) Classification Officer Anderson; (7) Secretary's Representative A. Cochran; and (8) Florida Department of Corrections (FDOC) Secretary Ricky Dixon. See Complaint at 2-4. Robinson sues each Defendant in his individual and official capacity. See id.

Robinson alleges that on September 23, 2024, while housed at Taylor Correctional Institution, Defendant Edwards ordered the officer who was escorting Robinson to medical to instead "take [Robinson] to confinement." Id. at 8. Six days later, on September 29, 2024, Defendant Wells delivered to Robinson a disciplinary report (DR) written by Defendant Edwards, which charged Robinson with inciting a riot. Id. On October 1, 2024, Robinson was transferred to Columbia Correctional Institution, where his disciplinary hearings commenced. Id. at 8 n.1. He contends that during the investigation, he authored a written statement, requested his former cell mate as a witness, and asked the disciplinary team to review the video recording. Id. at 8. At the initial disciplinary hearing, Robinson advised Defendants Schwartz and Minshew "that he 'wasn't in Wing 2 [where the incident occurred], that he was in Wing 3 . . . so it was impossible for [him] to be in Wing 2' as the DR states." Id. "Defendant Minshew responded, after looking at something in his phone[,] 'you were only there for one day.'" Id. Defendant Schwartz then advised that they were "going to put this hearing off to another day." Id.

On October 17, 2024, Robinson had a second disciplinary hearing where Defendant Schwartz told Robinson that he "'talked to Taylor C.I. and [his] supervisor.'" Id. Defendant Schwartz then advised Robinson they found him

guilty. Id. According to Robinson, Defendant Wells failed to investigate Robinson's witness and falsified the video evidence. Id.

Robinson contested the guilty finding through the grievance process. See id. He contends that Defendants Barnes and Anderson improperly denied his formal grievance based on information in a separate DR. Id. Robinson filed a grievance appeal in which he stated Defendant Dixon, through Defendant Cochran, improperly "relied upon the same unjust means of the institutional level review by Defendant[s] Anderson and . . . Barnes to deny [Robinson's] appeal challenging the false prohibited DR conduct by Defendant Edwards." Id. Robinson attaches to his Complaint copies of his grievances and the responses thereto. See Doc. 1-1 at 5-8.

Robinson lists his injuries as follows: he "has been falsely labeled as a member of a security threat group;" he "has been in segregation for the past 4 months;" he "lost his above satisfactory status in both his security evaluations and assignment performances;" and he "lost the status to be transferred to an incentivise [sic] institution which provides programs for the effective transition back into society." Complaint at 9. As relief, Robinson seeks "$50,000 in damages[,]" restoration of his "former above satisfactory good adjustment status," and any other relief the Court deems just and proper. Id.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[1] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, under Eleventh Circuit precedent, to prevail in

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While not

5

required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (alternation and internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 679. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the Complaint, the Court must read Robinson's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham, 654 F.3d at 1175. And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto

counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

Here, Robinson's Complaint is due to be dismissed for the following reasons. First, Robinson sues each Defendant in his individual and official capacity, but Robinson fails to state an official capacity claim. If an officer is sued under § 1983 in an official capacity, the claim is considered a claim against the entity for which the officer is an agent. <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991). Thus, suing Defendants in their official capacities is equivalent to suing the FDOC, but the FDOC is not a "person" within the meaning of § 1983. <u>Gardner v. Riska</u>, 444 F. App'x 353, 355 (11th Cir. 2011). Moreover, the FDOC is immune from § 1983 liability for damages. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986). Although injunctive relief may be available against the FDOC, <u>Gamble v. Fla. Dep't of Health & Rehab. Servs.</u>, 779 F.2d 1509, 1511 (11th Cir. 1986), Robinson fails to allege

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

that any violation of his rights was caused by a FDOC custom, policy, or practice. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks and citations omitted)). Therefore, all official capacity claims are due to be dismissed.

Second, Robinson is not entitled to compensatory damages from Defendants in their individual capacities. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert a physical injury that is more than de minimis. Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015). Robinson does not allege that he suffered any physical injury. Thus, to the extent Robinson requests $50,000 in compensatory damages, his request will be dismissed.

Third, to the extent Robinson attempts to raise a claim under § 1983 based on an alleged violation of Title 33, Florida Administrative Code, he cannot do so. A violation of prison policy, alone, is insufficient to state a claim.

See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (recognizing that prison regulations are "not designed to confer rights on inmates"); see also Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."). As such, the Court will dismiss any claim based on an alleged violation of Title 33.

Fourth, to the extent Robinson claims that Defendants Wells, Schwartz, and/or Minshew denied him due process during his disciplinary proceedings, he fails to state a claim. Courts "examine procedural due process questions in two steps." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). First, the court "asks whether there exists a liberty or property interest which has been interfered with by the [s]tate[;]" and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. The Supreme Court has held the imposition of disciplinary confinement does not trigger due process protections. Sandin, 515 U.S. at 486 ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); see also Woodson v. Whitehead, 673 F. App'x 931, 933 (11th Cir. 2016) ("The Due Process Clause does not create an

enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated.").

Notably, Robinson does not allege his disciplinary confinement resulting from the subject DR affected the duration of his sentence. For instance, Robinson does not allege in his Complaint that he lost gain time credits as a result of this DR. See Doc. 1-1 at 4 (DR showing Robinson received 30 days in disciplinary confinement as a result of the guilty finding). And Robinson asserts no facts suggesting he faced conditions so severe that they imposed on him an atypical and significant hardship in comparison to the ordinary incidents of prison life. See Sandin, 515 U.S. at 484. Thus, Robinson's allegations, accepted as true, fail to show a denial of due process under the Fourteenth Amendment, and his due process claim is due to be dismissed. See Smith v. Deemer, 641 F. App'x 865, 867, 868 (11th Cir. 2016) (holding that the district court properly dismissed the plaintiff's due process claim because the disciplinary hearing did not result in a loss of good time credits and plaintiff did not allege his term of disciplinary confinement exposed him to atypical and significant hardship).

Fifth, "[s]upervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates." Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022); see Cottone v. Jenne, 326 F.3d 1352, 1360

(11th Cir. 2003). Indeed, "[s]upervisory officials cannot be held vicariously liable under section 1983 for the actions of their subordinates unless the supervisor 'personally participates in the alleged unconstitutional conduct' or 'there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" Smith v. Deal, 760 F. App'x 972, 975 (11th Cir. 2019) (quoting Cottone, 326 F.3d at 1360).

> There are three ways to establish a causal connection between a supervisor's actions and the unlawful conduct: 1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; 2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or 3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone, 326 F.3d at 1360 (citations and quotations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). This "standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014).

Dickinson v. Cochran, 833 F. App'x 268, 272 (11th Cir. 2020). Robinson contends that Defendant Dixon, through Defendant Cochran, violated his rights by denying his grievance appeal. Only Defendant Cochran signed the

appeal response; Defendant Dixon did not. See Doc. 1-1 at 8. Robinson does not allege that Defendant Dixon was personally involved in any alleged denial of his rights. Therefore, insofar as Robinson is attempting to hold Defendant Dixon liable for the alleged unconstitutional actions of others, such claim fails.

Finally, to the extent Robinson asserts that Defendants Cochran, Barnes, and Anderson violated his constitutional rights by failing to adequately address his grievances, he fails to state a claim. Not addressing a grievance in the manner a prisoner would like, without more, does not render an individual liable for the underlying constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[3] ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).

There are circumstances in which a defendant's failure to act in response to an inmate's grievances may result in a constitutional violation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327-29 (11th Cir. 2007) (finding that a

---

[3] Although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

defendant's lack of action in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury). In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. Id. at 1327-28.

But the facts of this case are distinguishable from those in Goebert. The defendant in Goebert completely disregarded his duty to investigate the

inmate's "self-evident" and time-sensitive serious medical complaints because he "automatically disbelieve[d] all inmate statements about medical care." Id. at 1328, 1329. Here, Defendants Cochran, Barnes, and Anderson considered and addressed Robinson's grievances, see Doc. 1-1 at 5-8; Robinson simply disagrees with their assessments.

Moreover, inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure." Moore v. McLaughlin, 569 F. App'x 656, 659 (11th Cir. 2014) (citing Bingham, 654 F.3d at 1177; Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); see Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 895 (11th Cir. 2015) (finding the district court did not err in dismissing the plaintiff's claim that the defendants "had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges[ b]ecause the prison grievance procedure does not create a protected liberty interest"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (finding the plaintiff failed to state a claim because he merely "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures"). Thus, to the extent Robinson alleges that Defendants Cochran, Barnes, and Anderson denied him due process in the grievance procedure, such allegations fail to state a claim.

14

In light of the foregoing, this case will be dismissed without prejudice for Robinson's failure to state a claim. Robinson may refile his claims under 42 U.S.C. § 1983 with factual allegations sufficient to support a claim for relief if he elects to do so. Notably, pro se litigants are subject to the same law and rules of court that govern other litigants who are represented by counsel. <u>See Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989). All filings with the Court must be made in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

Accordingly, it is

**ORDERED**:

1.     This case is **DISMISSED without prejudice**.

2.     The **Clerk of Court** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

3.     The **Clerk of Court** shall send Robinson a civil rights complaint form and an application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> (prisoner filings) form. If Robinson chooses to refile his claims, he may complete and file the appropriate forms. He should not include this case number on any form, as the Clerk will assign a new case number upon receipt. In initiating such a case, Robinson should either file a fully completed application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> or pay the $405 filing fee.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of April, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

JAX-3 4/1
c:
Joshua Eugene Robinson, #P18780